**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| 401 NORTH WABASH VENTURE LLC, | ) | |
| | ) | Case No. 10 C 01962 |
| Plaintiff, | ) | |
| | ) | Honorable Matthew F. Kennelly |
| vs. | ) | |
| | ) | Magistrate  Judge Michael T. Mason |
| ASCHER BROTHERS CO., INC., | ) | |
| RICHARD N. ASCHER and | ) | |
| DAVID R. ASCHER, | ) | |
| | ) | |
| Defendants. | ) | |

<u>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**</u>

   Defendants Ascher Brothers Co., Inc. ("Ascher Brothers"), Richard N. Ascher and David R. Ascher (together, "Defendants"), by and through their attorneys, hereby submit the following Memorandum of Law in Support of their Motion to Dismiss the Amended Complaint pursuant to Rules 12(b)(7) and 19 of the Federal Rules of Civil Procedure for failure to join necessary and indispensable parties, and pursuant to Rule 12(b)(1) based on the doctrine of abstention.

<u>**INTRODUCTION**</u>

   Plaintiff 401 North Wabash Venture LLC's attempt to make a federal case out of a mechanic's lien claim best handled in state court fails for lack of diversity.  Plaintiff fails to join in this action a number of other necessary party plaintiffs, whose joinder would deprive this Court of diversity jurisdiction.  In the alternative, this Court should abstain from exercising diversity jurisdiction over this matter.  For these reasons, the Amended Complaint must be dismissed pursuant to Rules 12(b)(7) and 19 of the Federal Rules of Civil Procedure, or in the alternative under Federal Rule of Civil Procedure 12(b)(1) on abstention grounds.

<u>**BACKGROUND**</u>

   On February 23, 2010, Ascher Brothers filed its mechanic's lien ("Ascher Mechanic's Lien") with the Cook County Recorder of Deeds pursuant to the Illinois Mechanics Lien Act,

770 ILCS 60/0.01 *et seq.* (the "Lien Act").[1]  *See* Ex. 1.  As required by law, the mechanic's lien was filed against each of the residential condominium unit owners at Trump International Hotel and Tower, located at 401 North Wabash Avenue, Chicago, Illinois ("Trump Tower"), and their respective interests in the commercial parcel and common areas at Trump Tower.  Subsequently, on May 14, 2010, Ascher Brothers filed its Complaint in Illinois State Court to foreclose the lien. *See* Ex. 2.[2]

In the interim, on March 30, 2010, Plaintiff (an alleged citizen of New York owned and controlled by Donald J. Trump) filed this Complaint against Ascher Brothers (a citizen of Illinois) based on diversity jurisdiction.  The Complaint seeks to quiet title and invalidate the Ascher Mechanic's Lien, and asserts damages arising from slander of title caused by the lien. On April 19, 2010, Plaintiff filed an Amended Complaint, adding Richard N. Ascher and David R. Ascher, also Illinois citizens, as defendants, seeking to impose personal liability upon them as well as their company in an amount in excess of $4 million as punitive damages in retaliation for Ascher Brother's attempt to preserve its statutory lien rights.  (*See* Am. Compl. ¶¶ 52-54.)

Contrary to its allegations in the Amended Complaint, Plaintiff does not have "exclusive possession, dominion and control" over the property known as Trump Tower. (*See* Am. Compl. ¶ 42.)  On August 4, 2008, Plaintiff submitted Trump Tower to the provisions of the Illinois Condominium Property Act, 765 ILCS 605/1 *et seq.* (the "Condo Act"), by recording with the Cook County Recorder of Deeds a "Declaration of Condominium Ownership And Of Easements, Restrictions, Covenants And By-Laws For The Residences At 401 North Wabash Avenue, A

---

[1] Judicial notice can be taken of the public records which establish the various property interests in Trump Tower, such as recorded liens, deeds and mortgages.  *See, e.g., General Electric Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997) (quoting Fed. R. Ev. 201(b)); *see also Garrett v. Empire Cooler Serv., Inc.*, No. 03 C 9137, 2004 WL 2011399, at *1 n.1 (N.D. Ill. June 21, 2004) (Darrah, J.); *Schrager v. Grossman*, No. 95 C 2214, 1995 WL 758283, at *2 n. 2 (N.D. Ill. Dec. 18, 1995) (Mem. Op.) (Marovich, J.); *cf. Smith v. Chase Mortgage Credit Group*, 653 F. Supp. 2d 1035, 1037 n. 1 (E.D. Cal. 2009).

[2] Exhibit C to the state court complaint is the Ascher Mechanic's Lien, which is attached hereto as Exhibit 1.

Condominium" (the "Residential Declaration").[3]   A true and correct copy of the Residential Declaration is attached hereto as Exhibit 3.[4]

Under the Condo Act, the effect of recording the Residential Declaration was to subdivide a portion of Trump Tower into separate residential condominium units each "capable of ownership in fee simple or any lesser estate."  765 ILCS 605/6.   Thus, Trump Tower, a single building, is actually an aggregation of individual residential and hotel condominium units and certain "Common Elements" to Trump Tower, such as the structural elements of the building, the hallways, the stairways, the elevators, the heating and ventilation equipment, and other common spaces or equipment.[5]   Each residential condominium unit owner shares a percentage of

---

[3] Also on August 4, 2008, Plaintiff caused the recordation with the Cook County Recorder of Deeds of the "Declaration of Condominium Ownership And Of Easements, Restrictions, Covenants and By-Laws For The 401 North Wabash Avenue Hotel Condominium" (the "Hotel Declaration"), which submitted certain "hotel condominium" units to the Condo Act.   However, the Ascher Mechanic's Lien does not attach to these "hotel condominium" units.

[4] The Residential Declaration has been amended several times to annex additional units and to make other conforming or modifying changes that are not relevant to this Motion.

[5] Under the Residential Declaration, the "Common Elements" are defined as follows:

> The Common Elements shall consist of all portions of the Property, except the Units, and including the Limited Common Elements, unless otherwise expressly specified herein.  The Common Elements include, without limitation and if applicable, any of the following items located at the Property:  the walls, roofs, hallways, interior and exterior stairways, passenger elevators, service elevators, entrances and exits, security system, life safety equipment and systems, mechanical equipment areas, utility rooms, water heaters serving multiple units, the Storage Areas, Individual Garages, bicycle rooms, if any, mail boxes, mail room, package room, cable television system ( to the extent leased or owned), if any, fire escapes, pipes, ducts, flues, shafts, electrical wiring and conduits (except pipes, ducts, flues, shafts, electrical wiring and conduits situated entirely within a Unit and serving only such Unit), central heating, cooling and ventilating systems servicing the Common Elements (but excluding those individual heating, cooling and ventilating systems or equipment situated entirely within a Unit and serving only such Unit), public utility lines, structural parts of the Building, sidewalks and walkways, landscaped and grass areas and all other portions of the Property except the individual Units.  Structural columns located within the boundaries of a Unit shall be part of the Common Elements.

Ex. 3, Residential Declaration, § 3.1.  An identical provision exists in the Hotel Declaration.

ownership in the Common Elements as allocated in the Residential Declaration. *See* Ex. 3, Residential Declaration, § 3.2; *see also* Ascher Mechanic's Lien, at Ex. B.

Thus, Plaintiff is the not the legal representative of all the unit owners and interest holders at Trump Tower. Approximately 250 residential condominium units have been sold at Trump Tower. *See* Ascher Mechanic's Lien, at Ex. C. Plaintiff is simply one of many unit owners at Trump Tower — in particular, Plaintiff is the owner of the "unsold units" at Trump Tower. *See* Ex. 3, Residential Declaration at 5 (defining "Unsold Unit" as "[t]hose units initially offered for sale by Declarant or Developer which are owned by Declarant or Developer and have not yet been sold, and legal title has not yet been conveyed, to an unrelated Person."). The interests of the residential condominium unit owners in the Common Elements are represented by their condominium association, The Residences At 401 North Wabash Avenue Condominium Association (the "Condo Association"). Under the Condo Act, the Condo Association has "standing and capacity to act in relation to matters involving the common elements or more than one unit, on behalf of the unit owners, as their interests may appear." 765 ILCS 605/9.1(b). The Condo Association, as required by Illinois law, is an Illinois not-for-profit corporation and serves as "the governing body for all of the Unit Owners." 765 ILCS 605/18.1(a); *see* Ex. 3, Residential Declaration, § 5.2; *see also* Illinois Secretary of State Corporation File Detail Report for "The Residences At 401 North Wabash Avenue Condominium Association," *available at* http://www.cyberdriveillinois.com, and attached hereto as Exhibit 4. The Condo Association is thus a citizen of the State of Illinois.

A number other interest holders in condominium units at Trump Tower are residents and citizens of the State of Illinois. For example, a number of Illinois banks hold mortgages on individual units, and thus have lien interests on the property. For example, North Shore Community Bank & Trust Company, an Illinois chartered bank which has a principal place of business in Wilmette, Illinois, has a lien interest in unit #61B owned by Orland Park Equities, Inc. *See* Ascher Mechanic's Lien, at Ex. C; *see also* Mortgage of North Shore Community Bank & Trust Company to Orland Park Equities, Inc. dated March 12, 2009, attached hereto as Group

4

Exhibit 5.[6]  The Ascher Mechanic's Lien casts the same cloud upon the titles of each of these mortgage holders in Trump Tower condominium units as it does against the interests of Plaintiff.

To the extent they may be considered necessary parties in the lien action, various owners of individual condo units are also citizens of Illinois.  For example, the owner of Trump Tower residential unit #61B is an Illinois corporation, Orland Park Equities, Inc.  *See* Special Warranty Deed dated March 20, 2009, attached hereto as Exhibit 6.  *See* Illinois Secretary of State, Corporation File Detail Report for "Orland Park Equities, Inc.," *available at* http://www.cyberdriveillinois.com, and also attached hereto as Exhibit 7.[7]

The Condo Association, the Illinois mortgage lenders, and (to the extent not adequately represented by the Condo Association) the Illinois residential condominium unit owners, are referred to collectively herein as the "Absent Parties."

---

[6] Similarly, Chicago Bancorp, Inc. is an Illinois chartered bank located in Chicago, Illinois, and holds interests as mortgagee in units #51B, 54G, 57C, 64C, 69F, 72F, and 84E.  *See* Ascher Mechanic's Lien, at Ex. C; *see also* Mortgage of Chicago Bancorp, Inc. to Farzan Setayesh and Laurence Lescynski, borrowers, dated May 26, 2009 (unit 51B); Mortgage of Chicago Bancorp, Inc. to Vissotara Tiv and Margaret Ng, Husband and Wife, dated June 11, 2009 (unit 54G); Mortgage of Chicago Bancorp, Inc. to Donald L. Martin, II, dated May 5, 2009 (unit 57C); Mortgage of Chicago Bancorp, Inc. to Daniel Moceri and Sharon Moceri, Husband and Wife, dated Feb. 27, 2009 (unit 64C); Mortgage of Chicago Bancorp, Inc. to Kerry J. Spaven and Frances S. Spaven, Husband and Wife, dated July 22, 2009 (unit 69F); Mortgage of Chicago Bancorp, Inc. to David Timson and Reggie Timson, Husband and Wife, dated July 10, 2009 (unit 72F); and Mortgage of Chicago Bancorp, Inc. to Peter Weismantle and Sandra Williams, Husband and Wife, dated June 12, 2009 (unit 84E), all attached hereto as Group Exhibit 5.

[7] As a further example, one of Trump Tower's more famous residents is Chicago Blackhawks hockey player Patrick Kane, owner and resident of Trump Tower residential condominium unit # 33J.  *See* Special Warranty Deed dated Sept. 29, 2008, attached hereto as Exhibit 8; *see also* Shania Sampson, "Blackhawks rookie star Patrick Kane spends $2M on new Trump Condo," Blockshopper.com (Sept. 29, 2008), *available at* http://chicago.blockshopper.com/news/story/500032830-Blackhawks_rookie_star_Patrick_Kane_spends_2M_on_new_Trump_condo, and also attached hereto as Exhibit 8; Shia Kapos, "A new high-rise home for city's sports stars," Crain's Chicago Business (Jan. 5, 2009), also attached hereto as Exhibit 8.

This list of Illinois citizens for purposes of diversity jurisdiction is not exhaustive.  There are undoubtedly numerous other condo owners who are citizens of Illinois.  For example, under the terms of each of the mortgages attached as Group Exhibit 5, the borrowers are required to "occupy, establish, and use the Property as the Borrower's principal residence within 60 days after the execution of [the mortgage] and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy…."  *See, e.g.,* Mortgage of Chicago Bancorp, Inc. to David Timson and Reggie Timson, Husband and Wife, dated July 11, 2009, at § 6.

For the reasons set forth below, the Motion to Dismiss must be granted because the Amended Complaint fails to join the Absent Parties, and the joinder of the Absent Parties as plaintiffs — according to their actual interest — would destroy diversity jurisdiction. In the alternative, this Court should abstain from exercising diversity jurisdiction.

## ARGUMENT

### I. Legal Standard Under Federal Rule Of Civil Procedure 12(b)(7).

Rule 19 of the Federal Rules of Civil Procedure provides for "a two-step inquiry for determining when it is proper to dismiss an action for inability to obtain jurisdiction over an individual with an interest in the litigation." *Hansen v. Peoples Bank of Bloomington*, 594 F.2d 1149, 1150 (7th Cir. 1979). First, Rule 19(a) "establishes the criteria for 'necessary' parties -- 'those persons who should be joined as parties to the action.'" *Burger King Corp. v. Amer. Nat'l Bank & Trust Co. of Chicago*, 119 F.R.D. 672, 674 (N.D. Ill. 1988) (quoting 7 Wright, Miller & Kane, *Federal Practice & Procedure: Civil* § 1604 at 36-37). Second, if a court determines that an absent person satisfies the Rule 19(a) criteria, the person "must be joined if his joinder is feasible," but if such joinder is not feasible because it would "destroy the court's subject-matter jurisdiction," and "in equity and good conscience" the court could not proceed in that person's absence, the absent person is deemed "indispensable" under Rule 19(b), and "the case *must* be dismissed." *Burger King*, 119 F.R.D. at 675 (emphasis in original).

In diversity cases, "state law clearly determines the nature of an individual's interest in a particular controversy or in the subject matter of a dispute," but "federal rules and the precedents construing them govern whether the absentee's particular interest, as defined by state law, should be treated as making his joinder desirable or imperative in an action in federal court." *Id.* at 677 n.4 (quoting 7A Wright, Miller & Kane, *Federal Practice & Procedure: Civil* § 1603 at 31).

### II. The Absent Parties Are Necessary Under Rule 19(a).

The first step of the inquiry requires application of the criteria set forth in Rule 19(a) of the FRCP. Rule 19(a) states:

    **(a)**      **Persons Required to Be Joined if Feasible.**

**(1)     Required Party.**

A person who is subject to service of process whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

(A)  in that person's absence, the court cannot accord complete relief among existing parties; or

(B)  that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a).  Because the rule is stated disjunctively, a party need only fulfill either of these two criteria to establish the absent party is a person to be joined if feasible.  *Tillman v. City of Milwaukee*, 715 F.2d 354, 358 (7th Cir. 1983).  Further, an absent party need not have "an interest *in* the *action*; instead, it requires only that he have an interest '*relating* to the *subject matter of* the action.'"  *Burger King*, 119 F.R.D. at 676 (emphasis in original).   The "fact that a party may not be bound by a judgment does not mean that an action may proceed without him."  *Doty v. St. Mary Parish Land Co.*, 598 F.2d 885, 887 (5th Cir. 1979).

"[W]here ownership or possessory interests in real estate … are at issue, any party with a (claim to a) legally protected interest in the property is a potential Rule 19(a) party."  *Burger King*, 119 F.R.D. at 676 (citing several cases).  Consideration must be given to "the type of legal interest asserted in the property" and "the type of relief demanded by the plaintiff."  *Steel Valley Authority v. Union Switch & Signal Div.*, 809 F.2d 1006, 1011 (3rd Cir. 1987) (citing 3A J. Moore, *Moore's Federal Practice* ¶ 19.09[1]).   "No decree can be entered affecting the title to property or cancelling any cloud thereon unless all of the parties interested in the title or in the particular cloud and who will be directly affected by any judgment that may be rendered are properly before the Court."  *McShan v. Sherrill*, 283 F.2d 462, 463-64 (9th Cir. 1960) (quoting *Stewart v. United States*, 242 F.2d 49, 51 (5th Cir. 1957)).  *See also Chance v. County Bd. of*

*School Trustees of McHenry County, Illinois*, 332 F.2d 971, 973-74 (7th Cir. 1964) (where federal action was brought by one of several subdivision lot purchasers, but did not include other subdivision lot purchasers whose joinder would have destroyed diversity, the absent parties were deemed indispensable under Rule 19 because they had a "joint interest" in the attack, the court noting that "[a] contrary view would provide an easy means of evading diversity jurisdictional requirements.")

Here, the Absent Parties are necessary parties under Rule 19(a)(1) because of their joint interest regarding the Ascher Mechanic's Lien. The cloud on title created by the lien casts its shadow indivisibly upon the common interests of Plaintiff and the Absent Parties. The basis of Plaintiff's attack on the Ascher Mechanic's Lien is not unique to the particular unsold units owned by Plaintiff (or work performed therein), but consists of claims generic in nature and capable of being asserted by any other similarly situated interest holder, or a statutorily designated representative like the Condo Association. The prejudice that the Absent Parties might face from a judgment rendered between Plaintiff and Defendants as to the validity and extent of the Ascher Mechanic's Lien arises from the precedential, persuasive, strategic and possibly preclusive effect of the judgment on subsequent litigation. If Plaintiff lost in its action to quiet title, or succeeded only partially, such a loss or partial victory might impair or impede the ability of the similarly situated interest holders to mount their own claims and obtain a more complete victory. *See Doty*, 598 F.2d at 887 n.4 (emphasizing the possible "adverse precedential effect of a judgment in finding prejudice to the absent party.")

Further, there is a substantial risk that Defendants would face the prospect of double, multiple, or otherwise inconsistent obligations if they are required to litigate the validity and extent of the lien claim against Plaintiff in federal court, and then against other interest holders in state court. This is contrary to the purpose of Rule 19, which is "to permit joinder of all materially interested parties to a single lawsuit so as to protect interested parties and avoid a waste of judicial resources." *Moore v. Ashland Oil, Inc.*, 901 F.2d 1445, 1447 (7th Cir. 1990). For example, in *Royal Travel, Inc. v. Shell Management Hawaii, Inc.*, Civ. No. 08-00314

JMS/LEK, 2009 WL 2448495, at *1 (D. Hawai'i Aug. 11, 2009), the court denied a plaintiff's motion to voluntarily dismiss non-diverse plaintiffs, who were individual unit owners in a condominium building, and dismissed a complaint for lack of subject-matter jurisdiction, where the non-diverse plaintiffs were necessary and indispensable parties to the remaining plaintiff's action alleging mismanagement of the condo association.  The court noted the potential prejudice to the defendants arising from "the substantial risk of having to litigate this matter simultaneously in separate forums."  *Id.* at *3.

In addition, Plaintiff here seeks *punitive* damages.  Either the Absent Parties must join this litigation to avoid being precluded from obtaining similar punitive damages from Defendants, or Defendants might be exposed to the potential for multiple impositions of punitive liability for the single act of filing the lien.  *Cf. Juzwin v. Amtorg Trading Corp.*, 718 F. Supp. 1233, 1235-1236 (D.N.J. 1989) (holding that "multiple awards of punitive damages for a single course of conduct violate the fundamental fairness requirement of the Due Process Clause," and holding that a prior award might have a preclusive effect where similarly situated plaintiffs had an opportunity to join and participate in the proceeding).

### III.    The Absent Parties Are Indispensable Under Rule 19(b).

Where joinder is not feasible, such as when joinder of the Absent Parties would destroy diversity jurisdiction, "the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed."  Fed. R. Civ. P. 19(b). As a preliminary matter, however, this Court must first determine whether joinder is in fact not feasible before applying the Rule 19(b) factors.  Here, it is clear that the Absent Parties are citizens of the State of Illinois, as are Defendants, and the joinder of the Absent Parties as plaintiffs would destroy the basis for diversity jurisdiction.   The sole question as to feasibility is whether the Absent Parties should be aligned as plaintiffs if joined.

The proper alignment of the Absent Parties is determined by the true "collision of interest" based on the "primary and controlling matter in dispute."  *City of Indianapolis v. Chase Nat. Bank of City of New York*, 314 U.S. 63, 69 (1941) ("It is our duty, as it is that of the lower

federal courts, to 'look beyond the pleadings, and arrange the parties according to their sides of the dispute.'") Here, there is no question that the Absent Parties are naturally aligned with the Plaintiff with respect to the Ascher Mechanic's Lien claim. The Ascher Mechanic's Lien casts its cloud on the titles and interests of Plaintiff and the Absent Parties, and the Plaintiff's action seeks to dispel that cloud and seek damages caused by that cloud. The Absent Parties have the very same interest as the Plaintiff in this regard. Further, there is no adversity between the Plaintiff and the Absent Parties with regard to the Plaintiff's action. For example, in a case involving a dispute between seven oil-and-gas field leasehold owners as to the apportionment of proceeds from a crude oil purchase contract, the Seventh Circuit determined that certain absent leasehold interest owners were necessary parties under Rule 19(a), and aligned those absent parties with the plaintiffs, destroying diversity as against the crude oil purchaser defendant. *Moore*, 901 F.2d at 1448 (noting that "[t]here is nothing in the record … to indicate that *all* of the potential claimants could be joined to this action without destroying diversity.")

Because joinder of the Absent Parties here would not be feasible, this Court must then consider the following four factors set forth in Rule 19(b):

> (1)  the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

> (2)  the extent to which any prejudice could be lessened or avoided by:  (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures;

> (3)  whether a judgment rendered in the person's absence would be adequate; and

> (4)  whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b). This four-factor analysis "overlaps to a large extent with that required by Rule 19(a)."  *Burger King*, 119 F.R.D. at 679.  In particular, the first and third factors are generally answered by the Rule 19(a) determination that an absent party is a necessary party.  *Id.* "Thus, the important factors for determining whether, despite the absence [of the necessary

10

party], 'equity and good conscience' call for this case to proceed in federal court are the second and the fourth." *Id.* at 679-680.

The first factor — how the Absent Parties might be prejudiced — has already been addressed on pp. 7-10 above.

With regard to the second factor, there is no practical way for this Court to "shape the relief" so as to protect both the Absent Parties and Defendants. Plaintiff's action to quiet title would necessarily require the assessment of the validity and extent of the Ascher Mechanic's Lien, and such questions predominate over and are common to the claims and defenses that would be asserted by the Absent Parties. Further, no matter how the relief is "shaped," Defendants would still face the "substantial risk of incurring double, multiple or otherwise inconsistent obligations" because they will have to litigate the lien claim in parallel federal and state proceedings, and the Absent Parties' claims regarding the lien could be impaired by the Court's ruling on this matter.

With regard to the third factor — the adequacy of a judgment without the Absent Parties — it is clear that Plaintiff is not the legal representative of the Absent Parties with standing or capacity to sue or be sued on their behalf; the proper representative is the Condo Association, not Donald Trump (or Plaintiff). "It is also clear … that at least in the Seventh Circuit, mere similarity of interest will not do; there must be 'an identity of interest between the absent [party] and the one already a party to the action.'" *Burger King*, 119 F.R.D. at 678 (quoting *Hansen*, 594 F.2d at 1153). Plaintiff does not share an identity of interest with the Absent Parties, insofar as Plaintiff holds a different percentage share of the Common Elements than each of the Absent Parties individually or collectively, and thus Plaintiff has a different stake in the outcome of the litigation (and potentially a greater incentive to settle under certain circumstances). Further, where the "substantial risk of incurring double, multiple or otherwise inconsistent obligations" is the reason for joinder, "the fact that one of the parties may fully represent the absent person's interest will not remove the latter's Rule 19(a) status." *Id.* at 678 n.5 (citing *Gottlieb v. Vaicek*, 69 F.R.D. 672 (N.D. Ill. 1975)).

With regard to the fourth factor, Plaintiff has an adequate remedy if this federal action were dismissed for nonjoinder: proceeding in the Mechanic's Lien Section of the Chancery Division of the Circuit Court of Cook County. As noted by the Fifth Circuit, "real property disputes are particularly suited to resolution by state courts." *Doty*, 598 F.2d at 888. Federal practice commentators Wright & Miller concur:

> Since the courts of the state in which the land is situated are available to hear the action, dismissal by a federal court usually will not leave plaintiff without an opportunity to have the merits of his claim adjudicated. Indeed, unlike many other situations, a state court may be in a better position to entertain a real property action than is a federal court. In most cases one or more citizens of the forum state will be involved and local interests are always at stake when the forum state's land is at issue. For example, local title records may be affected by the judgment. Because the special concern of a state for the ownership and utilization of its land manifests itself in many ways, federal courts should not refrain from leaving particular controversies to the local courts when the analysis required by Rule 19(b) indicates that it should not go forward in the absence of someone described in Rule 19(a).

7 C. Wright & A. Miller, *Federal Practice & Procedure* § 1621 at 208-09 (1972) (as quoted in *Doty*, 598 F.2d at 888). There is no reason in either equity or good conscience that Donald Trump should be entitled to a different forum from other interested parties to litigate his claims regarding the Ascher Mechanic's Lien claim.

## IV.  This Court Should Abstain From Exercising Diversity Jurisdiction Over This Action.

In the alternative, this Court should abstain from exercising diversity jurisdiction over this action pursuant to the doctrines of abstention set forth in *Colorado River Water Conservation District v. United States,*, 424 U.S. 800 (1976) and *Burford v. Sun Oil Co.,* 319 U.S. 315 (1943).

The *Colorado River* abstention doctrine is a prudential and discretionary doctrine where federal courts will decline jurisdiction over a case where there is a parallel state court proceeding and where several other factors are present. There is a two-part inquiry: first, the district court must determine whether "the concurrent state and federal actions are actually parallel." *Tyrer v.*

*City of South Beloit, Illinois,* 456 F.3d 744, 751 (7th Cir. 2006). This does not require "formal symmetry between the two actions," but rather a suit is "parallel" when "substantially the same parties are contemporaneously litigating substantially the same issues in another forum." *Id.* at 752. Second, once it is established that the suits are relatively parallel, "the court must consider a number of non-exclusive factors that might demonstrate the existence of 'exceptional circumstances.'" *Id.* at 751. There were initially four "primary factors to be considered" under *Colorado River*: (1) whether "the same *res* is involved in both cases"; (2) "inconvenience to the parties"; (3) the "need to avoid piecemeal litigation"; and (4) the "order of state/federal filings." *Tyrer*, 456 F.3d at 754. The Supreme Court subsequently (in *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1 (1983)) added six additional factors: (5) the source of governing law, state or federal; (6) the adequacy of state-court action to protect the federal plaintiff's rights; (7) the relative progress of state and federal proceedings; (8) the presence of absence of concurrent jurisdiction; (9) the availability of removal; and (10) the vexatious or contrived nature of the federal claim. *Tyrer*, 456 F.3d at 754.

Consideration of these factors weighs heavily in favor of abstention. For the reasons already discussed, the two actions are parallel — all the parties to this case are parties in the state court case, and the same issues, relating to the validity of Ascher's lien, are common to both cases. Moreover, the same *res* — *i.e.*, interests in real estate located in Trump Tower and Ascher's lien on same — is involved in both cases. It would be inconvenient for the parties to proceed in both forums at once, and proceeding with this case would result in piecemeal litigation. Although Plaintiff's case was filed first, neither case has progressed very far (both cases are in their infancy), making the "order of filing" factor of little importance. The source of the governing law in both cases is Illinois state law, there is concurrent jurisdiction in the state court, and the state court action can fully protect plaintiff's rights. Moreover, there are no federal claims or federal questions of any kind involved. *See also Koranda v. City of Chicago,* No. 05 C 1856, 2005 WL 6242047, at *2 (N.D. Ill. Aug. 2, 2005) (J. Holderman) (dismissal based on both *Younger* and *Colorado River* abstention doctrines appropriate — even where

13

plaintiff asserted federal Sec.1983 claims — where actions was parallel to other pending state court claims involving the parties).

This Court should also abstain under the *Burford* abstention doctrine, which holds that federal courts should abstain from exercising diversity jurisdiction over a matter where the exercise of federal jurisdiction would be disruptive of the state's "unified method for the formulation of policy and determination of cases." *Burford*, 319 U.S. at 333-334; *Gen. Ry. Signal Co. v. Corcoran*, 807 F. Supp. 1361, 1363 (N.D. Ill. 1992) (dismissing federal interpleader action under *Burford*, where federal action might interfere with state proceeding involving liquidation of insurance company). *Burford* abstention is appropriate where (1) "there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at the bar"; or (2) "where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy of substantial public concern." *New Orleans Public Service, Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 361 (1989); *Kendall-Jackson Winery, Ltd. v. Branson*, 82 F. Supp.2d 844, 861 (N.D. Ill. 2000).

Mechanic's lien claims, and their validity and relative priority, do involve difficult questions of state law which bear on policy problems of substantial public import, *i.e.*, the resolution of claims to title to real estate. Such "real property disputes are particularly suited to resolution by state courts." *Doty v. St. Mary Parish Land Co.*, 5598 F.2d 885, 888 (5th Cir. 1979). "Because the special concern of a state for the ownership and utilization of its land manifests itself in many ways, federal courts should not refrain from leaving particular controversies to the local courts." *Id.* (quoting 7 C. Wright & A. Miller, *Federal Practice & Procedure* § 1621 at 208-09 (1972)).

Moreover, the exercise of federal jurisdiction in this case would disrupt the comprehensive regulatory scheme enacted by the Illinois General Assembly as embodied in the Lien Act. The Lien Act is "a creation of statute in derogation of the common law that provides extraordinary remedies to certain classes of contractors and subcontractors," and is imbued with

a number of "technical and procedural requirements." *First Bank of Roscoe v. Rinaldi*, 262 Ill. App. 3d 179, 187 (2nd Dist. 1994). In particular, an action to foreclose upon a mechanic's lien requires joinder of "necessary parties" including "the owner of the premises, the contractor, all persons in the chain of contracts between the claimant and the owner, all persons who have asserted or may assert liens against the premises under this Act, and any other person against whose interest in the premises the claimant asserts a claim." 770 ILCS 60/11(b). The purpose of joining all potentially interested parties in an action to foreclose upon a mechanic's lien is to allow a full and final adjudication of the rights, interests, and priorities of the various claimants against a common *res*. *See Malkov Lumber Co. v. Serafine Builders, Inc.*, 1 Ill. App. 3d 543, 549 (1st Dist. 1971) (noting that "the purpose and intent of the Mechanic's Lien Act" requires consolidation of "all suits pending for foreclosure of mechanics' liens against the concerned premises.") Plaintiff, by instituting this separate federal action, disrupts this comprehensive scheme under the Lien Act, and seeks to pre-empt and affect the interests of all other potential claimants and interest-holders. Thus, this Court should abstain from exercising diversity jurisdiction in this case pursuant to the *Burford* abstention doctrine.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant their Motion to Dismiss the Amended Complaint with prejudice.

Dated: May 17, 2010

Respectfully submitted,

ASCHER BROTHERS CO., INC.; RICHARD N. ASCHER; and DAVID R. ASCHER


By:    s/ Joseph G. Bisceglia

      One of Their Attorneys

Ronald B. Grais
Joseph G. Bisceglia
Anwar T. Shatat
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, Illinois 60654-3456