## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| 401 NORTH WABASH VENTURE LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 10-cv-1962 |
| | ) | |
| ASCHER BROTHERS CO., INC., | ) | Judge Matthew F. Kennelly |
| RICHARD N. ASCHER and | ) | |
| DAVID R. ASCHER, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S MEMORANDUM IN
## OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Stephen Novack
John F. Shonkwiler
Christopher G. Dean
NOVACK AND MACEY LLP
100 North Riverside Plaza
Chicago, IL 60606
(312) 419-6900
Doc# 361421

Plaintiff 401 North Wabash Venture LLC respectfully submits this memorandum in opposition to Defendants' Motion to Dismiss (the "Motion") and in response to Defendants' Memorandum of Law in support thereof ("Memorandum" or "Mem. at ___").

## ARGUMENT

- After having signed a written contract for $5 million, and

- after having expressly agreed in that contract that all extras must be approved in written change orders, and

- after having signed 15 separate formal change orders that raised the contract price to around $6 million, and

- after having signed a lien waiver attesting under oath that the total contract price, including all change orders, was less than $6 million,

Defendants filed a Notice And Claim For Mechanic's Lien (the "Lien"), claiming that the contract price is actually in excess of $9 million.

In response, Plaintiff, a New York citizen, filed this action to remove the cloud created by the Lien, and to collect damages for Defendants' willful and slanderous actions. Not wanting to stay in a forum that will swiftly adjudicate these claims, Defendants responded by attempting to move the dispute to the Circuit Court of Cook County where it takes much longer to get a case to trial.

Defendants' Motion asks the Court to either: (a) dismiss this case under Rule 19 of the Federal Rules of Civil Procedure because there are allegedly necessary and indispensible parties who cannot be joined (the "Absent Parties"); or (b) abstain in favor of a "parallel state court proceeding" -- a proceeding that Defendants filed after the instant case was filed and just one day before filing the Motion. As will now be explained, Defendants' arguments have no merit.

I.      **Defendants' Foreclosure Action Is A Compulsory Counterclaim**

Six weeks after the instant case was filed -- and just one business day before filing their Motion -- Defendants filed a lawsuit in the Circuit Court of Cook County to foreclose on the Lien (the "Foreclosure").  (A copy of the Foreclosure Complaint without exhibits is attached hereto as Exhibit A.)  Yet, under Rule 13, the Foreclosure is a compulsory counterclaim in this case.

A compulsory counterclaim is any claim the pleader has against an opposing party that: "(A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a)(1).  Both of these requirements are easily met here.  First, the "transaction or occurrence" test -- which is liberally construed, Hartford Steam Boiler Inspection & Ins. Co. v. Quantum Chem. Corp., No. 91-C-6907, 1994 WL 494776, at *6 (N.D. Ill. Sept. 8, 1994) -- is satisfied here because the Lien is the "occurrence" and the Foreclosure "arises out of" the Lien.  Indeed, it is a suit to foreclose that very Lien.  Second, this Court can acquire jurisdiction over all parties in the Foreclosure.  See 735 ILCS 5/2-209(a)(3) (ownership, use or possession of real property in Illinois sufficient to establish personal jurisdiction); Newman v. 1st 1440 Inv., Inc., No. 89 C 6708, 1990 WL 125369, at *1-2 (N.D. Ill. Aug. 22, 1990) (nonresident owner of mortgage on Illinois property subject to personal jurisdiction).  Moreover, the Court would have supplemental subject matter jurisdiction over this compulsory counterclaim regardless of any lack of diversity between the new parties and Defendants.  Hartford, 1994 WL 494776, at *5.

The purpose of Rule 13 is "to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters."  Id. at *6 (quotations omitted). Here, had Defendants just followed the law and filed the Foreclosure as a counterclaim, there

would be only <u>one</u> lawsuit in only <u>one</u> forum, representing the <u>entire</u> dispute between the parties -- exactly what Rule 13 is intended to accomplish. <u>Id.</u> There would be no issue concerning the so-called Absent Parties (who would all be counter-defendants), and no abstention issue.

In all events, as will now be shown, Defendants' Motion has no merit because the Absent Parties are <u>not</u> necessary or indispensable parties, and because abstention is not warranted.

## II.    <u>The Absent Parties Are Not Necessary Or Indispensable Parties</u>

Rule 19 provides a two-step inquiry. <u>First</u>, the Court must determine whether absent parties are "necessary" under Rule 19(a). <u>Second</u>, if -- but only if -- the Court decides that they are necessary, it must then consider whether they are "indispensable" under Rule 19(b). Here, the Absent Parties are neither necessary nor indispensable.

### A.    <u>The Absent Parties Are Not Necessary Parties -- Rule 19(a)</u>

Defendants do not rely on Rule 19(a)(1)(A). Instead, Defendants argue that the Absent Parties are necessary parties under Rule 19(a)(1)(B) -- <u>i.e.</u>, that the Absent Parties "claim an interest relating to the subject of the action," which, if decided in their absence, may be "impair[ed] or impede[d]," or may subject Defendants to "inconsistent obligations." (Mem. at 7-9.) This argument fails.

#### 1.    <u>The Absent Parties Do Not Have Interests That May Be Impaired</u>

The Memorandum (at 8) argues that the Absent Parties have an interest because "the lien casts its shadow indivisibly" upon all owners of interests in the Trump International Hotel & Tower, Chicago (the "Property"). Yet, that is not the kind of interest that makes a party "necessary" in an action to quiet title. A judgment on such a claim affects only the <u>claimant's title</u> (not the property) and it has <u>no</u> <u>binding</u> <u>effect</u> on any non-party claiming an interest in the property. <u>See</u> <u>Holt v. King</u>, 250 F.2d 671, 674-75 (10th Cir. 1957) (no binding effect on non-party claimants, so absent parties not necessary under Rule 19); <u>Gen. Elec. Credit Corp. v. Am.</u>

Nat'l Bank & Trust, 562 F. Supp. 456, 460 (N.D. Ill. 1983) (same regarding foreclosure action);

see also Cadorette v. U.S., 988 F.2d 215, 223 (1st Cir. 1993) (federal statutory action to quiet

title judgment decides title only as between parties); 74 C.J.S. Quieting Title § 7 ("The subject

matter of an action to quiet title is the title, and not the land, and the interest to be quieted is in

the title.").

    As a result, it is established law that one tenant in common may sue to quiet title without

joining other tenants in common. As the Ninth Circuit explained:

> It has frequently been held that a cotenant can maintain an action
> to quiet his title in the federal court without joining his cotenant
> and that the federal court has jurisdiction thereof if there is a
> diversity of citizenship notwithstanding the fact that if the tenant in
> common was joined as plaintiff there will be no such diversity of
> citizenship.

Rose v. Saunders, 69 F.2d 339, 340 (9th Cir. 1934) (citing Elmendorf v. Taylor, 23 U.S. 152,

166 (1825)); see also Holt, 250 F.2d at 674-75 & n.11 (same) ("This rule has been uniformly

followed in other circuits."). This principle is dispositive here. Indeed, Plaintiff and the other

condominium owners are cotenants as to the Property's common areas. E.g., Seaphus v. Lilly,

691 F. Supp. 127, 134 (N.D. Ill. 1988). Moreover, the foregoing cases hold that each property

owner has an independent claim to quiet its own title, and other owners with non-adverse

interests need not be joined. As the Tenth Circuit explained:

> The plaintiffs have the right to have their title determined. The
> rights of [non-party co-tenants] Edwards and Pauline Franklin
> cannot be determined herein and consequently they will not be
> injuriously affected.

Holt, 250 F.2d at 675. Accordingly, Plaintiff has a right to have its title cleared, and a judgment

on that issue will not preclude any Absent Parties from litigating their own claims separately, if

they choose to litigate. Although the Memorandum (at 8) meekly suggests that a judgment in

this case could "possibly" have a preclusive effect on the Absent Parties, it cites <u>no</u> authority for this and, as shown above, courts have uniformly held just the opposite.

      **2.**    <u>**Defendants' "Precedential Effect" Argument Fails**</u>

Having no sustainable argument that this litigation will have any <u>preclusive</u> effect on the Absent Parties, the Memorandum (at 8) contends that it may have some harmful <u>precedential</u> effect "[i]f Plaintiff lost . . . or succeeded only partially." This argument fails on two fronts.

<u>First</u>, it is not likely that this litigation would have any measurable precedential effect on non-parties. The Memorandum (at 8) is wrong that "Plaintiff's attack on the Ascher Mechanic's Lien . . . consists of claims generic in nature and capable of being asserted by any other similarly situated interest holder." Defendants signed a lien waiver. (Am. Compl. ¶ 21.) This waiver <u>precludes</u> the Lien as against anyone who reasonably relied on it. <u>Lazar Bros. Trucking, Inc. v. A&B Excavating, Inc.</u>, 850 N.E.2d 215, 219 (Ill. App. Ct. 2006). To avoid the fatal consequences of this waiver, Defendants must show that <u>Plaintiff</u> knew some fact that would have rendered its reliance on the waiver unreasonable. <u>Id.</u> Any finding concerning <u>Plaintiff's</u> knowledge or reliance would be of no consequence in subsequent litigation brought by <u>others</u>.

<u>Second</u>, where, as here, an existing party (Plaintiff) adequately represents the absent party's interest, an absent party is <u>not</u> a necessary party under Rule 19, even if a judgment in its absence would have a "significant precedential effect" on any subsequent litigation. <u>Butz v. Sparks</u>, No. 89-C-5739, 1990 WL 19983, *3-4 (N.D. Ill. Feb. 27, 1990); <u>see also Altmann v. Republic of Austria</u>, 142 F. Supp. 2d 1187, 1212 (C.D. Cal. 2001) ("Absent parties are not necessary parties if their interests are adequately represented by existing parties.").

Here, Plaintiff adequately represents any and all interests at stake in this case. Indeed, the Memorandum (at 10) effectively concedes this:

> The Absent Parties have the very same interest as the Plaintiff in
> this regard. Further, there is no adversity between the Plaintiff and
> the Absent Parties with regard to the Plaintiff's action.

Under these circumstances, there is no need for the Absent Parties to be before the Court. Altmann demonstrates the point. There, the plaintiff sued to recover paintings that were owned by her family before being stolen by the Nazis. 142 F. Supp. 2d at 1192. The defendants argued that the plaintiff's heirs were necessary and indispensible parties. The court disagreed, explaining that "the heirs' claims have a common genesis, and they have no disputes among themselves regarding the proportional interest of each [in the paintings]." Id. at 1212. As the Memorandum admits, the same is true here.

There is also no reason to believe that Plaintiff will be anything less than zealous in attacking the Lien. See id. (court considers whether party has incentive, ability and willingness to make absent party's arguments). Indeed, without waiting for Defendants to file a foreclosure suit, Plaintiff filed this suit to remove the Lien and recover damages. Further, as the owner of all "unsold units" at the Property (Mem. at 4) and the borrower under mortgages on the Property (Am. Compl. ¶ 36), Plaintiff has plenty of incentive to defeat the Lien.

### 3. No Risk Of Inconsistent Obligations

Without explanation, the Memorandum (at 8) contends that Defendants would face the prospect of inconsistent obligations "if they are required to litigate the validity and extent of the lien claim against Plaintiff in federal court, and then against other interest holders in state court." Not so. "Inconsistent obligations" under Rule 19, are not the same as inconsistent adjudications or results. Delgado v. Plaza Las Ams., Inc., 139 F.3d 1, 3 (1st Cir. 1998). That Defendants might prevail in one forum and lose in another does not require joinder under Rule 19. Robertshaw Controls Co. v. Therm-O-Disc, Inc., No. 09-C-1816, 2009 WL 4043083, at *2 (N.D. Ill. Nov. 20, 2009) (quoting Delgado). In Delgado, the First Circuit explained the distinction:

6

> Inconsistent obligations occur when a party is unable to comply with one court's order without breaching another court's order concerning the same incident. Inconsistent adjudications or results, by contrast, occur when a defendant successfully defends a claim in one forum, yet loses on another claim arising from the same incident in another forum. Unlike a risk of inconsistent obligations . . . a risk of inconsistent adjudications or results . . . does not necessitate joinder of all of the parties into one action pursuant to Fed.R.Civ.P. 19(a).

139 F.3d at 3 (citations omitted). Here, although simultaneous litigation of the Lien in two separate forums may render inconsistent <u>results</u>, it will not render inconsistent <u>obligations</u>.

Defendants' case, <u>Royal Travel, Inc. v. Shell Mgmt. Haw., Inc.</u>, No. 08-00314, 2009 WL 2448495, at *1 (D. Haw. Aug. 11, 2009), does not compel a different conclusion. There, the relief sought (invalidation of certain votes by condo association, and a declaration of the association's authority) presented an <u>actual</u> risk of imposing inconsistent <u>obligations</u> if litigated in multiple forums.

Defendants' contention that they may be subject to "double" damages is unfounded. This District's decision in <u>Butz v. Sparks</u> is on point. There, "Raymond" sued his attorney for malpractice. 1990 WL 19983, at *1. Raymond's son and partner, "Terry," filed a "virtually identical" lawsuit against the same attorney in state court. The attorney moved to dismiss, arguing that Terry was indispensible but could not be joined without destroying diversity jurisdiction. <u>Id.</u> at *3. Recognizing that each plaintiff "has his own individual and separate malpractice claim against defendant," <u>id.</u> at *4, the court denied the motion, stating that:

> an important premise against which courts administer the indispensable party rule is that [p]ersons suffering similar injury ordinarily do not have to join in seeking to redress their injuries through litigation. Defendant need not be concerned that plaintiff will recover damages in this suit which Terry Butz might also recover in the state court action. Plaintiff can only recover for his own losses, and there is no indication that there will be a problem distinguishing plaintiff's losses from Terry Butz's losses.

Id.; see also Delgado, 139 F.3d at 3 (potential plaintiffs from same event need not be joined as plaintiffs); Pan Am. World Airways, Inc. v. U.S. Dist. Court, 523 F.2d 1073, 1077-78 (9th Cir. 1975) (same). The same is true here. Plaintiff is not required to join the Absent Parties who also may have damages claims. Plaintiff's claim is its own claim, and Plaintiff can recover only its own losses.

The Memorandum (at 9) suggests that the foregoing principle does not apply where the plaintiff seeks punitive damages. But the only case on which it relies -- Juzwin v. Amtorg Trading Corp., 718 F. Supp. 1233 (D.N.J. 1989) -- had nothing to do with Rule 19 or the concept of necessary or indispensable parties. Moreover, Juzwin ultimately denied the defendants' request to limit punitive damages awards, finding that any due process concerns were trumped by, among other things, considerations of fundamental fairness to the plaintiffs. Id. at 1234-36.

In all events, Defendants should not be heard to complain that they would be prejudiced if forced to litigate the Lien in two proceedings. After all, if there is any prejudice, it is self-imposed. Defendants filed their suit in state court, and they can easily remedy the situation by re-filing it now as a counterclaim in this case. (See Section I supra.)

### 4.    Defendants' Other Cases Are Inapposite

In addition to Royal Travel and Juzwin (distinguished above), Defendants' Rule 19 argument cites ten cases, but makes no effort to explain why any of them is applicable or persuasive here. In fact, Defendants' cases are inapposite.

Four of Defendants' cases are easily distinguished from this case because the plaintiffs in those cases were asserting claims that were adverse to the absent parties' interests. See Moore v. Ashland Oil, Inc., 901 F.2d 1445 (7th Cir. 1990) (plaintiffs sought to establish sole ownership of oil leaseholds over interest of absent parties); Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006 (3d Cir. 1987) (plaintiff sought to enjoin demolition of factory and use of property

for other purposes over interest of absent factory site owner); <u>Doty v. St. Mary Parish Land Co.</u>, 598 F.2d 885 (5th Cir. 1979) (plaintiffs who sought to have their ownership rights in the land declared superior to that of the lessor were, thus, adverse to absent mineral lessee and royalty owners); <u>McShan v. Sherrill</u>, 283 F.2d 462 (9th Cir. 1960) (plaintiffs sought to be declared owners of accreted land over interest of absent parties).

Three of the cases Defendants cite for general legal principles have nothing to do with real property. <u>See</u> <u>Tillman v. City of Milwaukee</u>, 715 F.2d 354 (7th Cir. 1983) (annulment of apprentice indenture); <u>Hansen v. Peoples Bank of Bloomington</u>, 594 F.2d 1149 (7th Cir. 1979) (trusts); <u>Gottlieb v. Vaicek</u>, 69 F.R.D. 672 (N.D. Ill. 1975) (rescission of interest in limited partnership).

Defendants' extensive reliance on <u>Burger King Corp. v. American National Bank & Trust Co. of Chicago</u>, 119 F.R.D. 672 (N.D. Ill. 1988), is particularly misplaced. There was no issue in that case concerning property title or ownership. The court merely found that a subtenant needed to be joined where the issues in dispute were whether <u>that</u> <u>subtenant</u>: (a) had a right to assign his sublease; and (b) had failed to maintain the property as required by law. <u>Id.</u> at 674.

Finally, Defendants get no help from either <u>City of Indianapolis v. Chase National Bank</u>, 314 U.S. 63 (1941), or <u>Chance v. County Board of School Trustees</u>, 332 F.2d 971 (7th Cir. 1964). Neither of those cases even cites Rule 19, let alone engages in any analysis under the Rule.

*     *     *

Because, as shown above, the Absent Parties are not necessary parties under Rule 19(a), there is no need for the Court to consider under Rule 19(b) whether they are indispensible. For the sake of completeness, however, that issue will now be addressed.

**B.      The Absent Parties Are Not Indispensible Parties -- Rule 19(b)**

If absent parties are necessary, but joinder under Rule 19(a) would destroy jurisdiction, then the Court must determine whether the absent parties are "indispensible" under Rule 19(b) -- i.e., whether "in equity and good conscience" the action should be dismissed rather than proceed without them.  Here, even assuming *arguendo* that the Absent Parties are necessary parties (they are not), the case should not be dismissed.

The Memorandum (at 11) argues that the Absent Parties are indispensible under Rule 19(b)(2) because the Court cannot "shape the relief" in a way that protects both the Absent Parties and Defendants.  This is wrong.  The test is whether the Court "can do justice to the parties before it without injuring absent persons."  Texas v. Wall, 107 F.2d 45, 50 & n.6 (7th Cir. 1939) (quoting Waterman v. Canal-La. Bank & Tr. Co., 215 U.S. 33, 49 (1909)).  As explained above, no judgment entered herein will preclude or otherwise harm any Absent Party.

The Memorandum (at 11) also argues that, under Rule 19(b)(3), any judgment entered will be "inadequate" without the Absent Parties because Plaintiff does not have the same interest as the Absent Parties.  Not so.  Indeed, this argument comes only one page after Defendants admit the opposite -- i.e., that Plaintiff and the Absent Parties have "the very same interest" in removing the cloud created by the Lien.  (Id. at 10.)  In any event, the more applicable Rule 19(b)(3) analysis is contained in Butz, where the court held that:

> [Terry and Raymond Butz] each has his own individual and separate malpractice claim against defendant.  This case can completely resolve the controversy between plaintiff and defendant.  The prospect of later litigation between defendant and Terry Butz is not in itself sufficient to make Terry Butz an indispensable party.

Butz, 1990 WL 19983, at *4.

Finally, the Memorandum (at 12) argues that Plaintiff has an adequate remedy in state court. The <u>Butz</u> defendant made this very same argument, and the court squarely rejected it:

> the availability of the alternative forum, standing alone, is not a sufficient reason to dismiss. Where the plaintiff can otherwise maintain a diversity action in federal courts, the plaintiff has an interest in the forum granted by federal law and chosen by him.

<u>Id.</u> (citation and quotation omitted). Here, Plaintiff, a citizen of New York, chose this forum and availed itself of the federal protections provided to out-of-state litigants. Further, Plaintiff filed this action to obtain swift relief from a lien it regards as frivolous. Defendants' attempt to move this case to the overcrowded and slow Cook County Circuit Court (where they have asked for a jury trial) should be rejected. <u>See Butz</u>, 1990 WL 19983, at *4 (crowded Cook County docket weighs against dismissing federal case).

## III. Abstention Is Not Warranted

"Abstention from the exercise of federal jurisdiction is the exception, not the rule." <u>Colorado River Water Conservation Dist. v. United States</u>, 424 U.S. 800, 813 (1976). This is because federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." <u>Id.</u> at 817; <u>Kendall-Jackson Winery, Ltd. v. Branson</u>, 82 F. Supp. 2d 844, 853 (N.D. Ill. 2000) (same). To that end, "[o]nly the clearest of justifications will warrant dismissal." <u>Colorado River</u>, 424 U.S. at 819. "[T]he doctrine of abstention is 'an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it' and may be invoked only in those 'exceptional circumstances' in which surrendering jurisdiction 'would clearly serve an important countervailing interest.'" <u>Int'l Coll. of Surgeons v. City of Chicago</u>, 153 F.3d 356, 360 (7th Cir. 1998) ("<u>ICS</u>") (quoting <u>County of Allegheny v. Frank Mashuda Co.</u>, 360 U.S. 185, 188-89 (1959)). As explained below, this case presents no such "exceptional circumstances" or "important countervailing interests" -- under either <u>Colorado River</u> or <u>Burford</u>.

11

**A.    Defendants Cannot Rely On The *Colorado River*
Doctrine To Cure The Problem They Created**

Colorado River abstention is appropriate only where both:  (1) concurrent federal and state court actions are parallel; and (2) exceptional circumstances exist.  E.g., AXA Corporate Solutions v. Underwriters Reinsurance Corp., 347 F.3d 272, 278 (7th Cir. 2003).  There is no doubt that the Foreclosure is "parallel."  In fact, as explained above, that parallelism merely underscores why the Foreclosure should have been filed as a compulsory counterclaim in this case.  But the analysis does not end there, because Colorado River abstention "is disfavored even where the necessary parallel state proceeding exists."  Forty One News, Inc. v. County of Lake, 491 F.3d 662, 668 (7th Cir. 2006).

The Memorandum (at 13) claims that other factors "weigh[] heavily in favor of abstention."  The argument is that "[i]t would be inconvenient for the parties to proceed in both forums at once, and proceeding with this case would result in piecemeal litigation."  (Id.)  This complaint rings hollow, however, because the potential for inconvenience and piecemeal litigation exists only because Defendants ignored Rule 13(a)'s directive and filed the Foreclosure in state court.  As such, Defendants "brought this curse upon [themselves] and cannot complain without coming to terms with the problem [they have] created."  Comtel Techs., Inc. v. Paul H. Schwendener, Inc., No. 04 C 3879, 2005 WL 433327, at *16 (N.D. Ill. Feb. 22, 2005).  Indeed, it would be "especially inequitable" to apply Colorado River abstention at the request of the very party "who created the danger of piecemeal litigation."  Id.

Finally, even if some other Colorado River factors moderately favor abstention, the Court need not -- and should not -- decline jurisdiction.  That is because "Colorado River requires that the balance be heavily weighted in favor of the exercise of jurisdiction."  Oakland County Ret.

Sys. v. Massaro, ___ F. Supp. 2d ___, 2010 WL 1378562, at *7-8 (N.D. Ill. Apr. 7, 2010) (declining to abstain under Colorado River despite the presence of many Colorado River factors).

### B. The *Burford* Abstention Doctrine (Mem. at 14) Does Not Apply

Burford abstention is appropriate only where: (1) "there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) "the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." New Orleans Pub. Serv., Inc. v. Council of New Orleans, 491 U.S. 350, 361 (1989). Neither of these circumstances is present here.

### 1. Illinois's Mechanic's Lien Act (the "Act") Is Well Settled And Clear

The Memorandum (at 14) claims that "mechanic's lien claims . . . involve difficult questions of state law which bear on policy problems of substantial public import." Not only is this argument unsupported by any citation or explanation, but it was squarely rejected by the only federal court of which we are aware that considered whether a mechanic's lien law implicates important local policy for Burford purposes. Liner Tech., Inc. v. Warren County Pollution Control Fin. Auth., No. 91-1713, 1991 WL 246943, at *4 (D.N.J. Oct. 22, 1991).

But, even if the Act did reflect some important public policy, "Burford abstention is rarely, if ever, appropriate when the 'state law to be applied appears to be settled.'" ICS, 153 F.3d at 362 (quoting Colorado River). In ICS, the Seventh Circuit held that, even though there was "no question that the [City of Chicago's] Landmark Ordinance reflects important public policy concerns regarding . . . real estate," the first of the Burford rationales was inapplicable because the relevant state law was "well settled and clear." ICS, 153 F.3d at 362-63. As in ICS, the mechanic's lien law in this case is well settled and clear. Defendants do not even attempt to argue otherwise. Nor could they.

The Memorandum (at 14) quotes a Fifth Circuit case for the proposition that real property disputes "are particularly suited to resolution by state court." Yet, this is not a relevant factor under the Burford doctrine and, indeed, the case that Defendants quote does not even address abstention. In all events, the mere existence of some real property dispute does not warrant abstention. See, e.g., County of Allegheny, 360 U.S. at 187 (even in cases involving state land use issues, a district court must not decline jurisdiction where its exercise "would not . . . require the [court] to guess at the resolution of uncertain and difficult issues of state law").

### 2. The Exercise of Federal Jurisdiction Over This Case Would Not Disrupt A Comprehensive Regulatory Scheme

The Memorandum also argues (at 14) that "the exercise of federal jurisdiction in this case would disrupt the comprehensive regulatory scheme . . . as embodied in the Lien Act" and (at 15) that "by instituting this separate federal action," Plaintiff "disrupts this comprehensive scheme . . . and seeks to pre-empt and affect the interests of all other potential claimants and interest-holders." Defendants could not be more wrong.

First, the Act is not a "comprehensive regulatory scheme" for purposes of Burford abstention. See Liner Tech., 1991 WL 246943, at *4 (declining to abstain under Burford because New Jersey Mechanic's Lien Law is not a "complex state regulatory system"). There is no state agency or commission that regulates Illinois's lien law; there are only local recorder's offices that passively accept real property title filings.

Second, to implicate this Burford prong, there must be a state forum that "stand[s] in a special relationship of technical oversight or concentrated review to the evaluation of" the matter at issue. ICS, 153 F.3d at 363-64 (quotation omitted). "The ability to point to a specialized proceeding is a prerequisite of, not a factor in, the second type of Burford abstention." Id. (quotation omitted); see also id. at 364 n.9 (collecting cases that recognize need for "specialized

tribunal"). <u>Burford</u> abstention is improper, therefore, in the absence of some "deliberately" chosen forum in which to "concentrate judicial review . . . to endow that court with the specialized knowledge necessary to deal with cases arising under" the relevant law. <u>Id.</u> at 364. Here, the General Assembly has not designated any particular forum to adjudicate mechanic's lien disputes. The mere fact that the circuit court may have more experience under the Act than the District Court does not make it a "specialized forum" to hear lien claims. Indeed, federal courts repeatedly have held in other contexts that the Circuit Court of Cook County is <u>not</u> such a specialized forum. <u>See</u>, <u>e.g.</u>, <u>id.</u> (not a special forum under Landmark Ordinance); <u>Kendall-Jackson Winery</u>, 82 F. Supp. 2d at 862 (same under Illinois liquor law).

*     *     *

In sum, the broadly articulated rationale behind Defendants' abstention arguments, if accepted by the Court, would require federal courts to decline jurisdiction over virtually every action concerning real property. Yet, the presumption is just the opposite -- <u>i.e.</u>, that the Court should <u>not</u> abstain -- and, consistent therewith, federal courts routinely adjudicate cases involving mechanic's liens claims and real property disputes. Defendants have not shown that this case warrants any exceptional treatment in that respect.

<u>CONCLUSION</u>

For the reasons stated herein, Defendants' Motion should be denied in its entirety, and Plaintiff should be granted such other and further relief as is appropriate.

Respectfully submitted,

401 NORTH WABASH VENTURE LLC

By:_____ /s/ Stephen Novack_____
                    One of Its Attorneys

15

## CERTIFICATE OF SERVICE

Stephen Novack, an attorney, certifies that he caused copies of the foregoing to be served by electronically filing the document with the Clerk of Court using the ECF system this 23rd day of June, 2010.


                                  /s/  Stephen Novack